UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00059-KDB

| | |
|---|---|
| DANIEL L. CROWDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| BETHANY HERMAN, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [Doc. 14], Defendants' motions to seal [Docs. 23, 29], Plaintiff's Motion for Preliminary Injunction [Doc. 9], and Plaintiff's "Motion For Judges Consideration While deciding Preliminary Injunction," [Doc. 12], which the Court construes as a motion to supplement Plaintiff's Motion for Preliminary Injunction.

**I.   BACKGROUND**

On February 20, 2024, pro se Plaintiff Daniel L. Crowder filed this action pursuant to 42 U.S.C. § 1983 on behalf of himself and his wife Diane L. Crowder[1] against Defendants (1) Kimberly Burress, Probation/Parole Officer; (2) Bethany Herman, Chief Probation Officer; (3) Gregory Moss, Jr., Member of the North Carolina Post-Release Supervision & Parole Commission (the "Commission" or "Parole Commission")[2]; (4) Graham Atkinson, Commission Member; (5)

---

[1] The Court dismissed Diane Crowder as a Plaintiff in this matter on initial review because she did not sign the Complaint. [Doc. 6 at n.1].

[2] The Commission, which is part of the North Carolina Department of Adult Corrections (NCDAC), "has been delegated the authority by the General Assembly to decide which conditions authorized by N.C.G.S. § 15A-1368.4 to impose for every prisoner subject to [post-release supervision]." State v. McCants, 854 S.E.2d 415, 419 (N.C. App. 2020).

Haley Phillips, Commission Member; and (6) Darren Jackson, Commission Chair, in their individual and official capacities. [Doc. 1 at 13-14]. In his unverified Complaint, Plaintiff alleged that he and his wife were arrested in June 2016 and eventually pleaded guilty in 2022 to unidentified charges and were sentenced to terms of incarceration of 25 to 42 months. Plaintiff further alleged that, on release, he and his wife will be subject to twelve-month terms of post-release supervision a condition of which would prohibit them from having any contact with each other. Plaintiff claimed that the post-release supervision term prohibiting him from contacting and living with his wife "would be an ongoing violation of Federal Law" and violate his due process rights under the Fourteenth Amendment. Plaintiff sought monetary damages and injunctive relief ordering that Plaintiff and his wife not be found in violation of their post-release supervision terms "if they live together as husband and wife" and that they not be "retaliated against" during their supervised release. [Docs. 1, 4].

On March 5, 2024, Plaintiff's Complaint failed initial review. [Doc. 6]. The Court concluded that it appeared to lack subject matter jurisdiction because Plaintiff had not yet suffered injury and the matter in controversy was not yet final and "remained dependent on future uncertainties." [Id. at 4 (internal quotation marks and citation omitted)]. The Court also noted that it was unclear whether the terms of Plaintiff's post-release supervision had been entered as part of a state court judgment, and, if so, whether relief under 42 U.S.C. § 1983 was barred by Heck v. Humphrey, 512 U.S. 477 (1994), and whether 28 U.S.C. § 2254 was the proper avenue for relief. [Id. at 5-6]. The Court allowed Plaintiff to amend his Complaint to state a claim for relief. [Id. at 7].

Plaintiff timely filed an unverified Amended Complaint. [Doc. 7]. Plaintiff named the same Defendants, again in their individual and official capacities. [Id. at 12-13]. He alleged as

follows. On or about December 19, 2023, while Plaintiff was incarcerated at Randolph Correctional Center in Asheboro, North Carolina, Plaintiff's mother learned from Defendant Herman, Chief Probation Officer, that Plaintiff and his wife would not be allowed to live together nor contact each other while on post-release supervision. [Id. at 15]. On January 2, 2024, Plaintiff's case manager told him as much and that he needed to make alternative living arrangements because his wife would be released before him. [Id.]. Plaintiff attempted to appeal this post-release condition with the Commission. [Id. at 15-16]. On February 27, 2024, after apparently having been transferred to Craggy Correctional Center in Asheville, North Carolina, Plaintiff learned that the "parole condition" would not be changed. [Id. at 17-18]. Plaintiff was released from state prison on May 7, 2024, and is now serving 75 days in County Jail. He will be released from the Jail on or about July 20, 2023. [See id. at 19]. Similarly, his wife was released from prison on April 7, 2024, and is now serving 75 days in Jail. She will be released on June 20, 2024. [See id.]. On their respective releases from Jail, Plaintiff and his wife will each have nine and a half months remaining on their terms of supervised release.[3] [Id. at 19]. Plaintiff is not challenging the term of post-release supervision, but only the post release "'condition'" imposed by the Commission preventing him from living with his wife on release. [Id. at 19]. The challenged condition "was not ordered by the [state] court in or during any criminal proceeding," and is not among those authorized by N.C.G.S. § 15A-1368.4. Rather it is a discretionary condition imposed by the Commission under § 15A-1368.4(c).[4] [Id. at 19-20].

---

[3] According to the sworn materials filed by Defendants, Plaintiff's 12-month term of supervised release does not begin until the expiration of his misdemeanor sentences, which he is currently serving in the custody of the Swain County Sheriff. [Doc. 22-1 at ¶¶ 3-5].

[4] Nowhere in his Complaint or Amended Complaint did Plaintiff allege the nature of the crimes for which he was and is serving these sentences. [See Docs. 1, 7]. Although not bearing on Defendants' motion to dismiss, the Court by way of background and context provides the following from Defendants' response to Plaintiff's motion for preliminary injunction.

Plaintiff again claimed that the subject condition of his parole "would be an ongoing violation" of his Fourteenth Amendment due process rights. [Id. at 7]. For relief, Plaintiff seeks a permanent injunction allowing him and his wife to live together as husband and wife after their release from custody and preventing "retaliation" against them for living together as husband and wife while on post-release supervision.[5] [Id. at 24]. Plaintiff also sought monetary relief. [Id.].

---

On or about August 8, 2016, Plaintiff was indicted for felony child abuse that resulted in serious bodily injury to a four-year-old child in his care, "namely brain and spinal cord injury requiring neurosurgical intervention," in violation of N.C.G.S. § 14-318.4(a4). [Doc. 22-8]. On April 4, 2016, the minor victim was brought to the Swain County Hospital emergency room by Mrs. Crowder who claimed he was possibly a "drug baby." The minor victim was not breathing, ashen in color, had a core temperature of 87 degrees, very dirty, malnourished, and had bruises, scratches, and other injuries all over his body. [Doc. 22-3 at 4]. The child's skin was hanging off his body, he had no hair, and was covered in dirt and animal feces. [Id.]. The child was transferred to the intensive care unit at Mission Hospital because he was not breathing on his own. [Id. at 5]. The child was placed on life support. He had two "brain bleeds" and a spinal injury all caused by blunt force trauma. [Doc. 22-4; Doc. 22-5 at 6]. Investigators learned from one of the Plaintiffs and Mrs. Crowder's biological children that they kept the refrigerator locked and alarmed so they would know when the minor victim tried to get food, and, when he did, "they would take a switch to his legs." [Doc. 22-3 at 6]. Investigators also learned that, up until March 2016 when Plaintiff and Mrs. Crowder became the primary caregivers of the child, the minor victim was a "normal 4 year old boy." [Doc. 22-4].

On or about May 11, 2022, Plaintiff pleaded guilty to one count of violation of Section 14-318.4(a4), which carried a maximum term of 88 months, and two misdemeanor counts of violation of N.C.G.S. § 14-318.2, which each carried a maximum term of 150 days. The trial court sentenced Plaintiff to a maximum term of 42 months in the custody of the NCDAC for the felony conviction and a consecutive sentence of a maximum term of 75 days in the custody of the Swain County Sheriff for both misdemeanor convictions. [Doc. 22-10, 22-11]. Plaintiff's co-defendant wife, Diane Crowder, who also pleaded guilty, was identically sentenced the same day for the same crimes. [Docs. 22-12, 22-13]. Pursuant to a negotiated plea, Plaintiff and Mrs. Crowder also have the same 12-month post-release supervision sentences, which are for the suspended portion of their felony child abuse sentences. [Doc. 22-1 at ¶¶ 6, 10: Herman Aff.].

In addition to "required" and "controlling" conditions of supervised release mandated by statute, the Division of Community Supervision ("Community Supervision"), which is part of the NCDAC, is authorized to impose discretionary conditions that must be approved by the Commission. [Id. at ¶ 14 (citing N.C.G.S. § 15A-1368.4)]. One discretionary condition imposed by Community Supervision for all offenders with co-defendants is that such offenders have no contact with any co-defendant(s) during the term of supervised release. [Id. at ¶ 15].

[5] Plaintiff also separately moved to preliminarily enjoin Defendants from enforcing the disputed condition, [Doc. 9; see Doc. 12] and asks the Court to seal his supplement to his motion for preliminary injunction. [Doc. 12 at 7]. The Court will deny the request to seal. Plaintiff provides no grounds for this relief and himself acknowledges that the information he wants sealed, that is, the charges he and his wife were convicted of, are accessible for public viewing on the NCDAC website.

On initial review of Plaintiff's Amended Complaint, the Court, citing Ex parte Young, 28 S.Ct. 441 (1908), found that Plaintiff's official capacity Fourteenth Amendment due process claims against Defendants Herman, Moss, Atkinson, Phillips, and Jackson were "not wholly frivolous" and allowed them to pass initial review. [Doc. 10 at 5-6]. The Court, however, found that Plaintiff's allegations against Defendant Burress were insufficient and dismissed her as a Defendant. [Id. at 6]. The Court also dismissed Plaintiff's individual capacity claims against all Defendants because parole officers and members of the Commission are immune from liability in money damages.[6] and reserved ruling on Plaintiff's motion for preliminary injunction pending Defendants' response thereto [Id. (citation omitted), 8-9].

On April 26, 2024, Defendants moved to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and Plaintiff's failure to state a claim for relief, respectively, and answered Plaintiff's Amended Complaint. [Docs. 14, 16]. On May 3, 2024, Defendants responded to Plaintiff's motion for preliminary injunction and moved to seal certain documents filed in support of their response. [Docs. 22, 23; see Doc. 29]. Plaintiff has responded to Defendants' motion to dismiss [Doc. 28] and replied to Defendants' response to his motion for preliminary injunction [Doc. 31].

These matters are now ripe for adjudication.

## II.    MOTION TO DISMISS

Defendants move to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 15]. Defendants argue that this Court should dismiss this action because there is no federal constitutional right to relief; Plaintiff's remaining claim is not ripe for review; the Eleventh Amendment and common law immunity bar Plaintiff's claims;

---

[6] The Court reserved ruling on Plaintiff's motion for preliminary injunction pending Defendants' response thereto. [Id. at 8-9].

matters in the statutory discretion of the Commission are not properly before the Court; and, citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1981), this Court lacks authority to modify conditions of North Carolina supervised release. [Id.]. Because they are determinative, the Court addresses only Younger abstention and the lack of an applicable federal constitutional right to relief.

### A. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal based on the court's "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The United States Courts are courts of specifically limited jurisdiction and may exercise only that jurisdiction which Congress has prescribed. Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Therefore, whether the Court has jurisdiction over the subject matter of a case must be considered before addressing its merits. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). The plaintiff bears the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating whether a claim is stated, "[the] court

6

accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).

### B. Younger Abstention

Defendants argue *inter alia* that this Court lacks "authority" to address Plaintiff's claim, and that, as a matter of "administrative discretion" committed entirely to the Commission, judicial review is unavailable. [Doc. 15 at 7]. In this regard, Defendants tacitly invoke Younger, without meaningful argument in support of abstention. [See id.]. Because the Court may invoke Younger *sua sponte* in any event, the Court address it here. See Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976).

As a general matter, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred," New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Nonetheless, there is a "longstanding public policy against federal court interference with state court proceedings" that is grounded in "the notion of 'comity,' that is, a proper respect for state functions." Younger, 401 U.S. at 44.

7

Case 1:24-cv-00059-KDB   Document 39   Filed 07/01/24   Page 7 of 13

Federal courts, therefore, have broad discretion to withhold relief that would cause "undue interference with state proceedings." Council of New Orleans, 491 U.S. at 359.

In Younger, the Supreme Court held that a federal court should abstain from deciding cases in which plaintiffs seek to enjoin pending state-court criminal proceedings. See id. at 44. "So long as the plaintiff's constitutional claim can be adjudicated in the state forum, and 'so long as there is no showing of bad faith, harassment, or some other extraordinary circumstances that would make abstention inappropriate, the federal courts should abstain.'" White v. Covington, 2010 WL 538849, at *2 (E.D.N.Y. Feb. 12, 2010) (quoting Middlesex County Ethics Comm. v. Garden State Bar Ass'n., 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (internal quotation marks omitted)). Under the abstention doctrine, abstention is proper in federal court when (1) there is an ongoing state court proceeding; (2) the proceeding implicates important state interests; and (3) the petitioner has an adequate opportunity to present the federal claims in the state proceeding. Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1134 (4th Cir. 1995).

North Carolina's Justice Reinvestment Act ("JRA"), effective December 1, 2011, "mandates terms of post-release supervision for all convicted felons except those serving sentences of life without parole." United States v. Barlow, 811 F.3d 133, 137 (4th Cir. 2015) (citation omitted). In North Carolina, post-release supervision is defined as "[t]he time for which a sentenced prisoner is released from prison *before the termination of his maximum prison* term." Id. at 138 (quoting N.C. Gen. Stat. § 15A-1368(a)(1)). Under this scheme, the "'sentence or sentences'" imposed do not terminate until 'a supervisee completes the period of post-release supervision.'" Id. (quoting N.C. Gen. Stat. § 15A-1368.2(f)). "State law accordingly places time spent on post-release supervision within, not outside of or in addition to, the maximum term of imprisonment." Id. In this regard, the Fourth Circuit has held that a term of post-release

supervision in North Carolina is unambiguously part of a convicted felon's sentence. Id. at 138-40. Here, Plaintiff remains incarcerated on two misdemeanors related to his felony child abuse conviction and, beginning on or around July 20, 2024, he will begin a mandatory 12-month term of post-release supervision that is necessarily part of his state felony criminal sentence and under which he will remain a prisoner of the State of North Carolina.

The Fourth Circuit has not addressed whether mandatory North Carolina post-release supervision constitutes an "ongoing state proceeding" warranting Younger abstention. In considering the treatment of comparable circumstances by other courts, however, the Court concludes that the state proceedings at issue here are ongoing for Younger purposes. See Tobey v. Chibucos, 890 F.3d 634, 651 (7th Cir. 2018) (holding that Younger prohibits federal courts from "taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings," including ongoing supervision of a probation); Huggins v. ABK Tracking, Inc., 676 F.Supp.3d 662, 683 (S.D. Ind. Jun. 9, 2023) (concluding abstention appropriate in state criminal defendants' suit against supervision monitoring company for return of fees because its acts were in furtherance of conditions of said defendant's state criminal sentence); Mabe v. LNU, 2022 WL 4870885, at *3 (W.D.N.C. Oct. 3, 2022) (abstaining under Younger on initial review of § 1983 claim by North Carolina state prisoner in custody on post-release supervision violation); Azizi v. Zierhut, 2022 WL 3700884, at *2 (E.D. Wis. Aug. 26, 2022) (concluding on initial review of pro se plaintiff's § 1983 complaint that "this court cannot interfere [under Younger if] the plaintiff's probation term is lawful and still ongoing"). See also Moore v. City of Asheville, N.C., 396 F.3d 385, 395 (4th Cir. 2005) (upholding district court's abstention under Younger in § 1983 action by street preacher who was cited for violating city noise ordinance and thereby subject to "state coercive proceedings even when the state proceedings have ended, as long as the federal

9

Case 1:24-cv-00059-KDB    Document 39    Filed 07/01/24    Page 9 of 13

proceeding casts aspersions on the state proceedings or annuls their results" where he failed to appeal the citations and exhaust administration remedies and defaulted on his state appellate rights). Furthermore, the importance of the state interest at stake is self-evident and Plaintiff has an adequate opportunity to challenge the disputed condition in state proceedings should he be deemed in violation thereof. See N.C. Gen. Stat. §§ 15A-1368.6, 143B-1490.

Finally, as a practical matter, this Court's review of Plaintiff's disputed post-release condition would invite endless North Carolina supervisees unhappy with their conditions of post-release supervision to similarly seek such review, thereby rendering this Court the de facto North Carolina Parole Commission appeals court. The Court will not sanction that result under the circumstances here.

As such, for these reasons, the Court will exercise its discretion under Younger to abstain from federal judicial review of the challenged condition and grant Defendants' motion to dismiss. Moreover, even if the Court were not to abstain, the Court would nonetheless grant Defendants' Rule 12(b)(6) motion to dismiss.

### C. No Federal Constitutional Right

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). While Plaintiff's Complaint survived the very low frivolity bar on initial review of his Amended Complaint, further inquiry shows that there is no federal constitutional right for a defendant to cohabitate with his co-defendant, co-supervisee spouse during a mandatory term of post-release supervision that is necessarily part of such defendant's

10

Case 1:24-cv-00059-KDB   Document 39   Filed 07/01/24   Page 10 of 13

North Carolina criminal sentence.

To be sure, "[p]risoners … may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (citations omitted). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. "While a prisoner retains basic constitutional rights, the Supreme Court has found that an inmate's liberty interests derived from the Fourteenth Amendment are limited, given the nature of incarceration." Jones v. Keller, 698 S.E.2d 49, 55 (N.C. 2010) (citing Helms, 459 U.S. at 467, 103 S.Ct. 864)) (internal citation omitted).

As explained *supra*, Plaintiff will remain a prisoner of the State of North Carolina during his term of supervised release. There is of course no question that an incarcerated criminal defendant necessarily has no liberty interest in residing with his spouse during such incarceration. See, e.g., Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) (observing that an inmate "has no constitutional right to physical contact with his family"). Special conditions of supervised release barring co-defendants from associating with one another have also been upheld. See United States v. Hendricks, 69 Fed. App'x 592, 597 (4th Cir. 2003) (unpublished decision). In the instant case, Plaintiff and his wife, Diane Crowder, necessarily served the physically incarcerated portion of their felony child abuse sentences at different State correctional facilities. [See Doc. 22-10 at 1, Doc. 22-12 at 1]. As such, the condition Plaintiff challenges here is hardly different from the circumstances of Plaintiff's incarceration. See also Din, 576 U.S. at 95, 135 S.Ct. 2128 (eschewing "a free-floating and categorical liberty interest in marriage … sufficient to trigger constitutional protection whenever a regulation in any way touches upon an aspect of the

marital relationship"). The Court, therefore, would also dismiss Plaintiff's Amended Complaint on this ground.

## IV. MOTIONS TO SEAL

Also pending are Defendants' motion to seal and amended motion to seal certain exhibits submitted in response to Plaintiff's motion for preliminary injunction. [Docs. 23, 29; see Docs. 22-3, 22-5, 22-7, 24, 25, and 26]. As grounds, Defendants argue that sealing these exhibits is necessary to protect the privacy and identity of the minor victim in Plaintiff's criminal proceedings, the confidentiality afforded to juvenile proceedings, Diane Crowder's personal privacy and security in post-release supervision records, and the privacy and security of the Parole Commission and the NCDAC. [Docs. 23, 23-1, 29, 29-1]. In sum, Defendants argue that the "information contained in said documents is either confidential under North Carolina law or is otherwise sensitive information that invades the privacy of another." [Doc. 23-1 at 1; Doc. 29-1 at 1].

Before sealing a court document, the Court must "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).

In the present case, the public has been provided with adequate notice and an opportunity to object to Defendants' motion. Defendants filed their motions on May 3, 2024, and May 9, 2024, respectively, and they have been accessible through the Court's electronic case filing system since that time. Defendants have demonstrated that the subject records contain sensitive information concerning the minor victim, juvenile proceedings involving Plaintiff's own minor children, Diane Crowder's post-release supervision records, and NCDAC records protected by law. Defendants

12

have also shown that the public's right of access to such information is substantially outweighed by the Defendants' competing interest in protecting the details of such information. Having considered less drastic alternatives to sealing these particular documents, the Court concludes that sealing these records is necessary to protect the stated privacy interests. As such, the Court will order that the subject records shall remain unsealed.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss, deny Plaintiff's motion for preliminary injunction and other pending motion as moot, and grant Defendants' motions to seal.

### ORDER

**IT IS, THEREFORE, ORDERED** Defendants' Motion to Dismiss [Doc. 14] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction [Doc. 9] and Plaintiff's "Motion For Judges Consideration While deciding Preliminary Injunction" [Doc. 12] are **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal [Doc. 23] and Amended Motion to Seal [Doc. 29] are **GRANTED** and Docket Nos. 22-3, 22-5, 22-7, 24, 25, and 26 shall remained **SEALED**.

**IT IS SO ORDERED.**

Signed: July 1, 2024

Kenneth D. Bell
United States District Judge