UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00059-KDB

| DANIEL L. CROWDER, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| KIMBERLY BURRESS, et al., | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on remand from the Court of Appeals for the Fourth Circuit to further develop this Court's immunity rulings on Plaintiff's substantive and procedural due process claims.

I.  BACKGROUND

On February 20, 2024, pro se Plaintiff Daniel L. Crowder ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 on behalf of himself and his wife Diane L. Crowder.[1] [Doc. 1]. Plaintiff named as Defendants four members of the North Carolina Post-Release Supervision & Parole Commission (the "Commission"), including Gregory Moss, Jr., Graham Atkinson, Haley Phillips, and Darren Jackson (collectively, the "Commission Members"), and probation officers Bethany Herman and Kimberly Buress. The Court dismissed Plaintiff's Complaint without prejudice on initial review for reasons not relevant here. [See Doc. 6]. Plaintiff timely filed an

---

[1] At the time, Plaintiff and his wife were prisoners of the State of North Carolina, having been arrested as co-defendants in June 2016. They spent the next seven years "in and out of court … waiting on trial." [Doc. 4 at 1]. After eventually pleading guilty, completing his state sentence, and serving 75 days in county jail on related charges, Plaintiff was released from custody on or about July 20, 2024, subject to a 12-month term of post-release supervision. [Doc. 1 at 15]. The Court dismissed Diane Crowder as a Plaintiff in this matter on initial review because she did not sign the Complaint. [Doc. 6 at n.1].

Amended Complaint. [Doc. 7]. He named the same Defendants, again in their individual and official capacities. [Id. at 12-13].

Plaintiff alleged as follows.

On December 19, 2023, while Plaintiff was incarcerated at the Randolph Correctional Center in Asheboro, North Carolina, Defendant Herman contacted the Plaintiff's mother and told her that Plaintiff would not be allowed to live with or contact his co-defendant wife during his 12-month term of post-release supervision (or "PRS"). [Id. at 15]. The Commission imposed this "no-contact condition" of Plaintiff's post-release supervision.

On or about January 2, 2024, Defendant Herman emailed Plaintiff's case manager reiterating that Plaintiff would not be allowed to live with his wife while on PRS and advised that he would need to make alternative living arrangements. [Id.]. Plaintiff asked his case manager to appeal this condition. On or about January 10, 2024, Defendant Herman replied that she had already spoken with the Commission confirming the condition and that Plaintiff would have to appeal with the Commission. [Id. at 15-16]. On February 27, 2024, after apparently having been transferred to Craggy Correctional Center in Asheville, North Carolina, and after Plaintiff appealed with the Commission, Plaintiff learned that the condition would not be changed. [Id. at 17-18].

Plaintiff further alleged that the challenged condition is not among those "allowed" by N.C.G.S. § 15A-1368.4.[2] [Id. at 19]. Rather, it is a discretionary condition imposed by the Commission under § 15A-1368.4(c), which allows the Commission to impose conditions on a supervisee "it believes reasonably necessary to ensure that the supervisee will lead a law-abiding life or to assist the supervisee to do so…." [Id. at 20].

---

[2] Section 15A-1368.5 sets forth *inter alia* the required and appropriate controlling conditions of post-release supervision in North Carolina as well as provision for discretionary conditions the Commission may impose. N.C.G.S. §§ 15A-1368.5(b), (c), (e).

Plaintiff claimed the subject condition of his parole "would be an ongoing violation" of his Fourteenth Amendment due process rights. [Id. at 19-20]. Plaintiff also alleged that "[his] situation is rare, where a husband and wife are 'co-defendants,' therefore this post release condition should only be imposed after a persons [*sic*] due process is given." [Id. at 20]. He sought monetary relief and a permanent injunction allowing he and his wife to live together as husband and wife after their release from custody. [Id. at 24].

On initial review of Plaintiff's Amended Complaint, the Court allowed Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacities to proceed and dismissed Plaintiff's damages claims against the Defendants in their individual capacities "because as parole officers and members of the [Commission], they are immune from liability in money damages." [Doc. 10 at 5-6]. Then, on Defendants' motion to dismiss, the Court invoked Younger to dismiss Plaintiff's claims for prospective injunctive relief. [Doc. 39 at 10].

Plaintiff appealed, challenging the Court's dismissal of his claims against the Defendant Commission Members and Defendant Herman.[3] Plaintiff challenged three aspects of the Court's decision: "(1) its invocation of *Younger* abstention; (2) its dismissal of Crowder's damages claims on immunity grounds; and (3) its failure to address a procedural due process claim that Crowder purportedly pled." Crowder v. Herman, No. 24-6674, 2025 WL 3012353, at *2 (4th Cir. Oct. 28, 2025). The Fourth Circuit dismissed the portion of Plaintiff's appeal challenging Younger abstention because the term of his PRS ended in May 2025, rendering his claim for injunctive relief moot. Id. at *3. On the immunity question, the Fourth Circuit concluded that it could not determine whether this Court dismissed Plaintiff's claims for money damages based on absolute or qualified immunity or whether this Court "separately considered the conduct of the four

---

[3] The Plaintiff does not challenge the dismissal of Defendant Buress on appeal.

Commission members, who imposed the no-contact condition, and the parole officer, who administered the condition." Id. Finally, the Fourth Circuit noted that it read Plaintiff's Complaint to state both procedural and substantive due process claims and that, on remand, the Court should separately address Plaintiff's due process claims when addressing Plaintiff's damages claims. Id. at *3-4. The Fourth Circuit, therefore, dismissed Plaintiff's appeal of the dismissal of his claims for injunctive relief and remanded the remainder of Plaintiff's claims for this Court "to further develop its immunity rulings as to Crowder's substantive and procedural due process claims." Id. at *4. The Court construes this directive to require it to more precisely convey its holdings on initial review of Plaintiff's claims for damages in his Amended Complaint, which the Court does here.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding pro se, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear

4

failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

In his Amended Complaint, Plaintiff asserted that his Fourteenth Amendment procedural and substantive due process rights would be violated by the imposition of the challenged condition of his post-release supervision. On remand, the Court again considers Plaintiff's individual capacity procedural and substantive due process claims against Defendant Herman and the Defendant Commission Members.

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. 166 (2023).

"The Fifth Amendment [as applied to the States through the Fourteenth Amendment] provides that no person shall be deprived of life, liberty, or property, without due process of law. Although the amount and quality of process that our precedents have recognized as 'due' under the Clause has changed considerably since the founding, it remains the case that no process is due if one is not deprived of 'life, liberty, or property.'" Kerry v. Din, 576 U.S. 86, 90 (2015) (citations and internal quotation marks omitted).

To succeed on a procedural due process claim, a plaintiff must prove: (1) a cognizable "liberty" or "property" interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate. Bhattacharya v. Murray, 93 F.4th 675, 700 (4th Cir. 2024) (citation omitted).

The Due Process Clause also provides substantive rights which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (internal quotation marks omitted). Thus, to succeed on a substantive due process claim under § 1983, a plaintiff must show both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was "arbitrary in the constitutional sense." Id. at 129; see also Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011). However, "[t]here is no general liberty interest in being free of even the most arbitrary and capricious government action; the substantive component of the due process clause only protects from arbitrary government action that infringes a specific liberty interest." Hawkins v. Freeman, 195 F.3d 732, 749 (4th Cir. 1999) (citations omitted).

### A. Defendant Commission Members

Judges enjoy "matchless" protection from suit for alleged deprivation of rights, including against allegations of malice or corruption. McCray v. State of Md., 456 F.2d 1, 3 (1972), *overruled on other grounds*, Pink v. Lester, 52F.3d 73, 77 (4th Cir. 1995). This rule is tolerated because "judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." Id. In determining whether to expand this immunity to "lesser judicial personnel," the reasons underlying the creation of the immunity shield must be considered. Id. "The proper approach is to consider the precise function at issue, and to determine whether the officer is likely to be unduly inhibited in the performance of that function by the threat of liability for tortious conduct." Id. (quotation marks and citation omitted).

"The immunity of 'quasi-judicial' officers such as prosecuting attorneys and parole board

members derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges." Id.; Imbler v. Pachtman, 424 U.S. 409, 423 n. 20 (1976)) ("When judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as part of their function."). "Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties." Id. Where an official is not exercising judicial or quasi-judicial discretion, however, courts should not extend the protection of absolute immunity, "regardless of any apparent relationship of his role to the judicial system." Id. at 3-4.

Here, in imposing the no-contact condition at issue, the Defendant Commission Members were performing a quasi-judicial function and are absolutely immune from suits for damages under § 1983. As Plaintiff alleged, the Commission imposed the discretionary no-contact condition under N.C.G.S. § 15A-1368.4(c), which allows the Commission to impose conditions on a supervisee "it believes reasonably necessary to ensure that the supervisee will lead a law-abiding life or to assist the supervisee to do so…." [Id. at 19-20 (quoting N.C.G.S. § 15A-1368.4(c))]. In this regard, their alleged function was "functionally comparable" to that of a judge. See Imbler, 424 U.S. at 423 n. 20; United States v. Byrd, 808 Fed. App'x 161, 164 (4th Cir. 2020) (unpublished disposition) ("The imposition of conditions of supervised release 'is a core judicial function.'") (quoting United States v. Miller, 77 F.3d 71, 77, (4th Cir. 1996)); see also Pope v. Chew, 521 F.2d 400, 405 (1975) ("Parole Board members have been held to perform a quasi-judicial function in considering applications for parole and thus to be immune from damages in § 1983 actions."); Peoples v. Leon, 63 F.4th 132, 139 (2d Cir. 2023) (applying judicial immunity to parole board members' determination of conditions of post-supervision release); Mayorga v. Missouri, 442 F.3d

1128, 1131 (8th Cir. 2006) ("[A]bsolute immunity applies if parole officials have the power to attach conditions to a prisoner's early release."). Moreover, subjecting Commission Members to liability for the exercise of their discretionary duties would greatly undermine and inhibit their ability to effectively function in that role.[4]

For these reasons, regardless of the nature of the constitutional violation alleged, the Court concluded that the Defendant Commission Members were immune from suit and dismissed Plaintiff's individual capacity claim against them on initial review. See Franklin v. Shields, 569 F.2d 784, 798 (4th Cir. 1977).

**B.    Defendant Herman**

"Probation officers are also entitled to absolute immunity from suits for damages for alleged conduct performed in a quasi-judicial capacity.... A determination that a violation of a [supervisee's] conditions of supervision has occurred is a quasi-judicial function entitled to such immunity." Young-Bey v. Jones, Civ. No. 21-771, 2021 WL 1215771, at *2 (D. Md. Mar. 31, 2021).

Additionally, a probation officer's enforcement of a supervisee's conditions of post-release supervision is also entitled to immunity. In Douglas v. Muncy, 570 F.2d 499, 500-01 (4th Cir. 1978), the Fourth Circuit held that the district court "was correct in its conclusion" that a parole officer "who allegedly arbitrarily enforced the conditions of his parole" was immune from liability under § 1983. Although the Court did not clarify the nature of the immunity protecting the parole officer defendant, it cited Burkes v. Callion, 433 F.2d 318, 319 (9th Cir. 1970), in support of its

---

[4] As discussed infra, the Court recognizes that post-release supervision is mandatory for most felons in North Carolina. Nonetheless, the imposition of the no-contact condition here was discretionary under the relevant statutory scheme. Furthermore, even if the condition imposed were not discretionary, the nature of imposing conditions of post-release supervision more generally is nonetheless a quasi-adjudicatory act that qualifies for absolute immunity. See Peoples, 63 F.4th at 141.

8

conclusion. See Douglas, 570 F.2d at 501. And Burkes noted that probation officers preparing and submitting probation reports in criminal cases perform a quasi-judicial function and are entitled to "similar, if not the same, immunity that is accorded to judges for acts done by them in the exercise of their judicial functions." Burkes, 433 F.2d at 319.

Giving Plaintiff the benefit of every reasonable inference, he alleges that Defendant Herman administered the no-contact condition imposed under N.C.G.S. § 15A-1368.4(c). That is, he alleges that she communicated the condition to Plaintiff's mother and his case manager, advised Plaintiff through his case manager that he would need to make alternative living arrangements, and informed Plaintiff's case manager that she had already confirmed with the Commission that Plaintiff would be subject to the condition after Plaintiff indicated his desire to appeal.

While the Fourth Circuit has not plainly recognized a probation officer's administration of PSR conditions as a quasi-judicial function, under Douglas, it seems that Defendant Herman is entitled to quasi-judicial immunity  Moreover, there seems not much difference in a probation officer preparing and submitting probation reports in criminal proceedings or determining whether parole conditions have been violated, which have been routinely considered quasi-judicial functions, and administering post-release supervision or probation conditions. See Gilmore v. Bostic, 636 F.Supp.2d 496, 504 (S.D.W. Va. Mar. 27, 2009); Harrison v. Gunnells, C/Ano. 9:23-00584-RMG-MHC, 2024 WL 4682522, at *6 (D.S.C. Sept. 10, 2024); see also Benthall v. Smith, No. 1:17cv959, 2017 WL 6403025, at *1 (E.D. Va. Aug. 31, 2017), *aff'd*, 709 Fed. App'x 226 (4th Cir. 2018) ("Because defendant [pretrial services officer] is entitled to immunity for reporting suspected pretrial release violations to the court, plaintiff's § 1983 claim for money damages must be dismissed."). For these reasons, the Court concluded that Defendant Herman is entitled to absolute immunity from Plaintiff's due process claims here.

Moreover, even if Defendant Herman's alleged relevant function were not squarely protected by absolute immunity, she is nonetheless protected by qualified immunity. "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Public officers "who act in obedience to a judicial order or under the court's direction" are afforded qualified immunity. McCray, 456 F.2d at 5. District courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Even where an officer commits a constitutional violation, that officer is still entitled to qualified immunity if, in light of clearly established law, the officer could reasonably believe his actions were lawful. Henry, 652 F.3d at 531. The law is "clearly established" for qualified immunity purposes by decisions of the U.S. Supreme Court, Fourth Circuit Court of Appeals, or the highest court of the state where the case arose. Wilson v. Layne, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). This inquiry is limited to the law at the time of the incident, as "an official could not reasonably be expected to anticipate subsequent legal developments." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982).  For defendants to be entitled to qualified immunity, they must not have been on notice that their conduct violated established law.  Hope v. Pelzer, 536 U.S. 730, 741 (2002).  This does not mean "the very action in question [had] previously [been] held unlawful."  Estate of Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 910 (4th Cir. 2016).  Rather, the unlawfulness of the action must have been apparent "in light of pre-existing law."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged."  Wiley v. Doory, 14 F.3d 993, 995 (4th Cir. 1994) (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992) (citations omitted)).  "If there is a 'legitimate question' as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity."  Id. (quoting Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir. 1987), cert. denied, 489 U.S. 1010 (1989)).  "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

Here, Plaintiff claims that he has a right to contact and reside with his co-defendant spouse during his 12-month term of post-release supervision and that Defendant Herman violated his Fourteenth Amendment rights by administering the no-contact condition.[5]  North Carolina's Justice Reinvestment Act ("JRA"), effective December 1, 2011, "mandates terms of post-release supervision for all convicted felons except those serving sentences of life without parole."  United States v. Barlow, 811 F.3d 133, 137 (4th Cir. 2015) (citation omitted).  In North Carolina, post-

---

[5] In this regard, the Court does not read Plaintiff's Amended Complaint to assert a procedural due process claim against Defendant Herman.  That is, the Plaintiff alleged that he was entitled to due process before the condition was imposed.  [Doc. 1 at 20].  Plaintiff's allegations against Defendant Herman only touch on the administration of the already imposed no-contact condition.

11

release supervision is defined as "[t]he time for which a sentenced prisoner is released from prison *before the termination of his maximum prison* term." Id. at 138 (quoting N.C. Gen. Stat. § 15A-1368(a)(1)). Under this scheme, the "'sentence or sentences'" imposed do not terminate until 'a supervisee completes the period of post-release supervision.'" Id. (quoting N.C. Gen. Stat. § 15A-1368.2(f)). "State law accordingly places time spent on post-release supervision within, not outside of or in addition to, the maximum term of imprisonment." Id. As such, the Fourth Circuit has held that a term of post-release supervision in North Carolina is unambiguously part of a convicted felon's sentence. Id. at 138-40. Thus, Plaintiff remained a prisoner of the State of North Carolina during his term of supervised release.

"Prisoners … may not be deprived of life, liberty, or property without due process of law." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citations omitted). However, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Id. "While a prisoner retains basic constitutional rights, the Supreme Court has found that an inmate's liberty interests derived from the Fourteenth Amendment are limited, given the nature of incarceration." Jones v. Keller, 698 S.E.2d 49, 55 (N.C. 2010) (citing Hewitt v. Helms, 459 U.S. 460, 467 (1983)) (internal citation omitted).

The Supreme Court "has long recognized that freedom of personal choice in matters of marriage and family life is one of the liberties protected by the [substantive component of the] Due Process Clause of the Fourteenth Amendment." Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 499 (1977) (collecting cases). There is, however, no question that an incarcerated criminal defendant necessarily has no liberty interest in residing with his spouse during such incarceration. See, e.g., Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam) (observing that

an inmate "has no constitutional right to physical contact with his family"). Moreover, special conditions of supervised release barring co-defendants from associating with one another have also been upheld. See United States v. Hendricks, 69 Fed. App'x 592, 597 (4th Cir. 2003) (unpublished decision).

There are no precedential decisions issuing from the Supreme Court, the Fourth Circuit, or the North Carolina Supreme Court recognizing the right of co-defendant spouses to reside together during terms of PRS that are necessarily part of their criminal sentence. As far as the Court can tell, no other jurisdiction has considered this issue and very few jurisdictions have considered the more general right of a parolee, which is distinct from a North Carolina post-release supervisee, to cohabitate with his spouse. See Brown v. Maher, 597 F.Supp.3d 541, 546 (N.D.N.Y. Apr. 6, 2022) ("[A] parolee's right to live with his spouse is a fundamental right, and any parole condition impeding that right must withstand strict scrutiny."); Marquez v. Annucci, 2020 WL 3871362, at *6 (S.D.N.Y. July 9, 2020) (applying strict scrutiny to a parole condition that would have prevented the plaintiffs, independently convicted sex offenders, from associating with each other and getting married). Moreover, while the condition here certainly touches on the marital relationship by prohibiting Plaintiff from having contact with his co-defendant wife during his 12-month term of post-release supervision, it does not prohibit him and his wife from being married and is hardly different from the circumstances of Plaintiff's physical incarceration.

Without any precedential law clearly establishing the right at issue, Defendant Herman was not on notice that administering the no-contact condition violated established law, Hope, 536 U.S. at 741, particularly where she was acting in obedience to an order of the Commission, McCray, 456 F.2d at 5. Because Plaintiff did not allege facts showing that the alleged right was clearly established at the time of the challenged conduct, Defendant Herman was entitled to qualified

immunity even if not protected by absolute immunity.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's individual capacity damages claims against Defendants Commission Members and Herman based on alleged procedural and substantive due process violations fail initial review.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's individual capacity procedural and substantive due process claims against Defendants Herman, Moss, Jr., Atkinson, Phillips, and Jackson fail initial review and are **DISMISSED** in accordance with the terms of this Order.

The Clerk is respectfully instructed to transmit this Order to the Clerk of the United States Court of Appeals for the Fourth Circuit.

**IT IS SO ORDERED.**

Signed: December 22, 2025

Kenneth D. Bell
United States District Judge